# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **STEPHEN POTJE, TAMELA POTJE, SHARON DAVIS, BEAUFUS DAVIS, MATTHEW BALDWIN, TAMMY BALDWIN, ARNOR LEE, ANGELA LEE, GRETCHEN BROWN, PAUL BROWN, JEREMY ESTRADA,  EMILY ESTRADA, GUILLERMO ASTORGA JR., MICHAEL OLIVER, CARRIE OLIVER, RUSSELL WALTERS, ELAINE WALTERS, and MIKE ERICSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | **Case No.: 9:17-cv-81055**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF**<br><br>1. **FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTIVES ACT("FDUTPA"), FLA. STAT. §§ 501.201, ET.SEQ.**<br>2. **FLORIDA FALSE ADVERTISING LAW, FLA STAT. §§ 817.40, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| **BLUEGREEN CORPORATION,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.     STEPHEN POTJE, TAMMY POTJE, SHARON DAVIS, BEAUFUS DAVIS,

MATTHEW BALDWIN, TAMMY BALDWIN, ARNOR LEE, ANGELA LEE,

GRETCHEN BROWN, PAUL BROWN, JEREMY ESTRADA, EMILY

ESTRADA, GUILLERMO ASTORGA JR., MICHAEL OLIVER, CARRIE

OLIVER, RUSSELL WALTERS, ELAINE WALTERS, AND MIKE ERICSON

("Plaintiffs"), by and through their undersigned counsel, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, to challenge the illegal actions of BLUEGREEN CORPORATION ("Defendant") with regard to Defendant's uniform, unfair, and misleading business practices in selling vacation properties ("Timeshares"), including making multiple oral false promises about the ability to cancel and refund Timeshares, the annual increase in maintenance fees on Timeshares, and the ability to roll over points earned by class members for use on future  Timeshare reservations.

2.      Timeshares are a group of properties owned under an arrangement between multiple owners who agree to use a group of homes or locations under a timesharing agreement. Companies, such as Defendant, regularly manage and sell Timeshares to consumers, such as Plaintiffs.  The benefit to a consumer who enters into an agreement to purchase Timeshares that he or she a variety of destinations to choose from for vacations as opposed to just one location.

3.      Plaintiffs represent a group of consumers from various states, including Florida, who attended Defendant's Timeshare presentations and were subject to the same misrepresentations made by Defendant with regard to the actual terms and nature of Timeshares.  Defendant has a uniform policy to deceive consumers on a national scale in order to induce them into entering into purchasing agreements for Timeshares in order to unfairly profit at their customers' expenses.

2

4.     In particular, Defendant's representatives were specifically instructed by Defendant to make misrepresentations about the terms and nature of Timeshares that Defendant sold in order to induce consumers into entering into binding contracts with terms significantly and materially different and less favorable than the represented terms, even though Defendant and its agents knew that the promises they were making with regard to Timeshares were false.

5.     After Timeshares were purchased by Plaintiffs, Defendant refused to honor the specific terms it instructed its representatives to use in order to lock Plaintiffs and other unsuspecting consumers into expensive, binding contracts which could never be canceled, despite representations to the alternative.

6.     Plaintiffs make these allegations on information and belief, with the exception of those allegations that specifically pertain to a Plaintiff, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

7.     While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8.     Unless otherwise stated, Plaintiffs allege that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures to avoid any such violation, but in fact maintained procedures and policies that directly caused the damage suffered.

## JURISDICTION AND VENUE

9.     Jurisdiction in this Court is proper because the matter in controversy exceeds $5,000,000 exclusive of interest of costs.  Therefore, the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Defendant is headquartered in this judicial district; and, (ii) Defendant conducted business within this judicial district at all times relevant.

11.     Because Defendant conducts business within the State of Florida, personal jurisdiction is established.

## PARTIES

12.     Plaintiffs Michael Oliver and Carrie Oliver are each an individual who resides in the State of Florida and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

13.     Plaintiffs Jeremy Estrada and Emily Estrada are each an individual who resides in the State of Florida and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

14.     Plaintiffs Stephen Potje and Tamela Potje are each an individual who resides in the State of Missouri and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

15.     Plaintiffs Sharon Davis and Beaufus Davis are each an individual who resides in the State of Ohio and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

16.     Plaintiffs Matthew Baldwin and Tammy Baldwin are each an individual who resides in the State of North Carolina and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

17.     Plaintiffs Arnor Lee and Angela Lee are each an individual who resides in the State of Georgia and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

18.     Plaintiffs Gretchen Brown and Paul Brown are each an individual who resides in the State of New York and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

19.     Plaintiffs Russell Walters and Elaine Walters are each an individual who resides in the State of Ohio and each a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

20.     Plaintiff Mike Ericson is an individual who resides in the State of Alabama and a "person" and "consumer" as defined by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203.

21.     Plaintiff Guillermo Astorga Jr. is an individual who resides in the State of California and a "person" and "consumer" as defined by Florida Deceptive and

Unfair Trade Practices Act, Fla. Stat. § 501.203.

22.    Defendant is a company whose State of Incorporation and principal place of business is in the State of Florida.

23.    Defendant is a worldwide company that sells Timeshares to consumers.

24.    Defendant's sales of products and services are governed by the controlling law in the states in which they do business and from which the sales of products and services is coordinated from, which is Florida.   All practices and scheme that constitute violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203, were established and implemented in Florida.

### FACTUAL ALLEGATIONS

25.    Defendant had a common practice and scheme to orally misrepresent and make false and misleading representations about the nature and terms of its Timeshares to consumers in order to induce them into entering into purchasing contracts for Timeshares.

26.    Defendant's Timeshares require consumers to pay a large initial payment, potentially sub-divided into monthly payments akin to a mortgage, and an additional annual fee in the form of a "maintenance payment."  The maintenance payment is the only recurring payment a consumer would expect to pay on an annual basis to maintain access to his or her Timeshare after the balance on the account was paid off.

27.    In exchange for the above payments, consumers receive a set number of "points" which may be used to redeem rooms with Defendant and its partners through Timeshares.  The points act as money to the consumers to be used on reservations for Timeshares.  Different rooms at different times and different places cost different amounts of points.  The only benefit a consumer receives from entering into a purchasing agreement for a Timeshare with Defendant is directly linked to the ability to accumulate points and use them to rent Timeshares.

28.    Defendant misrepresented that Plaintiffs and other consumers would be able to cancel their Timeshares and obtain a refund if they were not satisfied with the level of services provided, that their maintenance fees on the Timeshares would remain low and not increase, and that the yearly allocation of points for the Timeshares would roll over between years such that they could continue to be used.

29.    In reality, these representations were false and Defendant would not permit Plaintiffs to cancel or refund their timeshares, routinely doubled or tripled the represented maintenance fees, and did not roll over any "points" between years.

30.    After making these misrepresentations to Plaintiffs in order to induce them to purchase a Timeshare, Defendant required Plaintiffs to sign a voluminous agreement which failed to include any of the terms orally represented and promised to Plaintiffs and used to induce Plaintiffs into agreeing to purchase a Timeshare.

31.    Such tactics employed by Defendant rely on falsities and have a tendency to

mislead and deceive a reasonable consumer.

32.    Defendant's representations were part of a common scheme to mislead consumers and incentivize them to enter into purchase agreements of Timeshares with Defendant, when in fact both the costs and value of Timeshares were completely misrepresented.

33.    Plaintiffs reasonably believed and relied upon Defendant's representations as to Timeshares.

34.    Plaintiffs materially changed their position in reliance on Defendant's representations and were harmed thereby.

35.    Plaintiffs were unable to ascertain or discover that Defendant's representations were completely false until after Plaintiffs had signed the purchase agreement for Timeshares and attempted to use the services contained therein. Additionally, Plaintiffs were unable to discover that Defendant's representations regarding the maintenance fees and the inability for the "points" to roll over into the next calendar year until a year had passed after entering into a purchase agreement for Timeshares.

36.    Had Defendant properly represented that it would not honor its representations about the ability to cancel, maintenance fees, and ability to roll over the points for Timeshares, Plaintiffs would not have entered into purchase agreements for Timeshares.

37.    Defendant benefited from falsely representing the nature and terms of its Timeshares. Defendant benefited from the loss to Plaintiffs.

38.    Defendant significantly and monetarily benefited by charging Plaintiffs additional maintenance fees and refusing to roll over points which should have been otherwise available to book vacation days through Timeshares.

39.    Plaintiffs allege this activity to be in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 to 201.213 ("FDUTPA").

40.    As further described below, Defendant and its agents uniformly made these misrepresentations to Plaintiffs at presentations that occurred across the United States over the course of years.

<u>Plaintiffs Michael Oliver and Carrie Oliver</u>

41.    Plaintiffs Michael Oliver and Carrie Oliver ("the Olivers") are citizens and residents of the State of Florida.

42.    On or around October 26, 2013, the Olivers attended a Timeshare presentation by Defendant in St. Petersburg, Florida.

43.    Defendant's agents represented that its Timeshares would be usable with other vacation providers including RCI and cruise companies.

44.    Defendant's agents also represented that if the Olivers were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Olivers.

45.    Defendant's agents also represented that the maintenance fees on the

Timeshares would not increase, and that the points would roll over between years.

46.     The presentation lasted over three (3) hours.

47.     After the Olivers entered into the purchase agreement for Timeshares with Defendant, they discovered that Defendant's representations had been false.  They were unable to use Timeshares to stay in any location, including with RCI or for cruises, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and their points have not rolled over between years.

48.     After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Olivers in order to induce them to purchase the Timeshares, the Olivers felt deceived and cheated by Defendant.

49.     Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Olivers would not have purchased the Timeshare.

50.     The Olivers have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Jeremy Estrada and Emily Estrada</u>

51.     Plaintiffs Jeremy Estrada and Emily Estrada ("the Estradas") are citizens and residents of the State of Florida.

52.     On or around February 2013, the Estradas attended a Timeshare presentation by Defendant in Boyne Falls, Michigan.

53.     At the presentation, Defendant's agents represented that if the Estradas were

not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Estradas.

54.    Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

55.    After the Estradas entered into a purchase agreement for Timeshares with Defendant, they discovered that Defendant's representations had been false.  They were unable to obtain a refund on the Timeshares, their maintenance fees have continued to increase over time, and their points have not rolled over between years.

56.    After discovering that Defendant had materially misrepresented the terms of purchase agreement for Timeshares to the Estradas in order to induce them to purchase Timeshares, the Estradas felt deceived and cheated by Defendant.

57.    Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Estradas would not have purchased the Timeshares.

58.    The Estradas have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Stephen Potje and Tamela Potje</u>

59.    Plaintiffs Stephen Potje and Tamela Potje ("the Potjes") are citizens and residents of the State of Missouri.

60.    On or around July 2014, the Potjes attended a Timeshare presentation by Defendant in Branson, Missouri.

61.    The Potjes were interested in entering into a purchase agreement for Timeshares with Defendant because their daughter attended college and lives in Branson, Missouri, thus having an annual stay there was of particular value to them.

62.    Defendant's agents represented that its Timeshares would provide this exact benefit and permit the Potjes to annually stay in Branson, Missouri.

63.    Defendant's agents also represented that if the Potjes were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Potjes.

64.    Defendant's agents also represented that the maintenance fees on Timeshares would not increase, and that the points would roll over between years.

65.    The presentation lasted over three (3) hours.

66.    After the Potjes entered into a purchase agreement for Timeshares with Defendant, they discovered that Defendant's representations were false.  They were unable to regularly stay in Branson, Missouri, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and their points have not rolled over between years.

67.    After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Potjes in order to induce them to purchase Timeshares, the Potjes felt deceived and cheated by Defendant.

68.    Had Defendant been truthful about the actual terms of the Timeshares, the Potjes would not have purchased Timeshares.

69.     The Potjes have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Sharon Davis and Beafus Davis</u>

70.     Plaintiffs Sharon Davis and Beafus Davis ("the Davises") are citizens and residents of the State of Ohio.

71.     On or around August 2014, the Davises attended a Timeshare presentation by Defendant in Charleston, South Carolina, after being referred by a Bass Pro Shop.

72.     Defendant's agents represented that its Timeshares would be usable with other vacation providers including RCI and cruise companies.

73.     Defendant's agents also represented that if the Davises were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Davises.

74.     Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

75.     The presentation lasted over six (6) hours.

76.     After the Davises entered into the purchase agreements for Timeshares with Defendant, they discovered that Defendant's representations had been false.  They were unable to use Timeshares to stay in any location, including with RCI or for cruises, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and their points have not rolled over between years.

77.     After discovering that Defendant had materially misrepresented the terms of

13

the Timeshare to the Davises in order to induce them to enter into a purchase agreement for Timeshares, the Davises felt deceived and cheated by Defendant.

78.     Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Davises would not have purchased Timeshares.

79.     The Davises have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Matthew Baldwin and Tammy Baldwin</u>

80.     Plaintiffs Matthew Baldwin and Tammy Baldwin ("Baldwins") are each a citizens and resident of the State of North Carolina.

81.     On or around February 2016, the Baldwins attended a Timeshare presentation by Defendant in Sevierville, Tennessee, after being referred by a Bass Pro Shop.

82.     Defendant's agents represented that if the Baldwins were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Baldwins because they were members of the Bass Pro Shop.

83.     Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

84.     Defendant represented that the presentation would last one (1) hour, but the presentation actually lasted over seven (7) hours, beginning at 9 a.m. and not ending until 4-5 p.m. that night.

85.     After the Baldwins entered into a purchase agreement for Timeshares from

Defendant, they discovered that Defendant's representations had been false. They were unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and their points have not rolled over between years.

86.   After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Baldwins in order to induce them to purchase Timeshares, the Baldwins felt deceived and cheated by Defendant.

87.   Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Baldwins would not have purchased Timeshares.

88.   The Baldwins have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Arnor Lee and Angela Lee</u>

89.   Plaintiffs Arnor Lee and Angela Lee ("the Lees") are citizens and residents of the State of Georgia.

90.   On or around June 2015, the Lees attended a Timeshare presentation by Defendant in Jacksonville, Florida.

91.   At the presentation, the Lees explained to Defendant's agent that they were on a fixed income from that the Veteran's Affair office because of Arnor Lee's ex-military disability, thus money was a significant concern to the Lees, as was the ability to be able to get out of and refund the Timeshares if they did not like them.

92.   Defendant's agents represented that its Timeshares would be readily usable

anytime at locations all over the country.

93.    Defendant's agents also represented that if the Lees were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Lees.

94.    Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

95.    Defendant represented that the presentation would last one (1) hour, but the presentation actually lasted over eight (8) hours.

96.    After the Lees entered into the purchase agreement for Timeshares with Defendant, they discovered that Defendant's representations had been false.  They were unable to use Timeshares to stay in any location, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and their points have not rolled over between years.

97.    After discovering that Defendant had materially misrepresented the terms of the Timeshare to the Lees in order to induce them to enter into the purchase agreement for Timeshares, the Lees felt deceived and cheated by Defendant.

98.    Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Lees would not have purchased the Timeshares.

99.    The Lees have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Gretchen Brown and Paul Brown</u>

100.  Plaintiffs Gretchen Brown and Paul Brown ("the Browns") are citizens and residents of the State of New York.

101.  On or around May 2015, the Browns attended a Timeshare presentation by Defendant in Shenandoah Valley, Virginia.

102.  At the presentation, Defendant's agents represented that if the Browns were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Browns.

103.  Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

104.  After entering into the purchasing agreement for Timeshares, Paul Brown became seriously ill such that he was no longer able to travel or use the Timeshares. When the Browns contacted Defendant to explain this and request they honor their offer of refund, Defendant refused and stated that the Browns were not permitted to cancel or obtain a refund for the Timeshares.  Instead, Defendant attempted to upsell the Browns into buying additional points.

105.  After the Browns entered into the purchase agreement for Timeshares with Defendant, they discovered that Defendant's representations had been false.  They were unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and their points have not rolled over between years.

106.   After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Browns in order to induce them to purchase the Timeshares, the Browns felt deceived and cheated by Defendant.

107.   Had Defendant not completely misrepresented the actual terms of the purchase agreement for Timeshares, the Browns would not have purchased the Timeshares.

108.   The Browns have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

Plaintiffs Russell Walters and Elaine Walters

109.   Plaintiffs Russell Walters and Elaine Walters ("the Walters") are citizens and residents of the State of Ohio.

110.   On or around June 2011, the Walters attended a Timeshare presentation by Defendant in Ridgedale, Missouri.

111.   On or around July 2013, the Walters attended a second Timeshare presentation by Defendant in Gatlinburg, Tennessee.

112.   Defendant's agents, in both presentations, represented that its Timeshares would be usable with other vacation providers including RCI and cruise companies.

113.   Defendant's agents also represented, in both presentations, that if the Walters were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Walters.

114. Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

115. The presentations each lasted over three (3) hours.

116. After the Walters entered into a purchase agreement for Timeshares with Defendant, they discovered that Defendant's representations had been false. They were unable to use the Timeshares to stay in any location, including with RCI or for cruises, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and their points have not rolled over between years.

117. After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Walters in order to induce them to purchase the Timeshares, the Walters felt deceived and cheated by Defendant.

118. Had Defendant been truthful about the actual terms of the Timeshare, the Walters would not have purchased the Timeshares.

119. The Walters have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiff Mike Ericson</u>

120. Plaintiff Mike Ericson ("Ericson") is a citizen and resident of the State of Alabama.

121. On or around September 2013, Mike Ericson attended a Timeshare presentation by Defendant in Shenandoah Valley, Virginia.

122.   Defendant's agents represented that the Timeshares would give Ericson the ability to rent hotel rooms for $276 per week in North Carolina.  Ericson told Defendant that this was incredibly important to him as he was building a house in North Carolina that would require him to spend long periods of time there. Defendant's agents represented that this would be no problem, and that he would specifically be able to rent hotel rooms at a cheap weekly rate if he signed up for a Timeshare.

123.   Defendant's agents represented that if Ericson was not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund Ericson.

124.   Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

125.   After Ericson entered into the purchase agreement for Timeshares with Defendant, he discovered that Defendant's representations had been false.  He was unable to obtain a refund on the Timeshares, his maintenance fees did and continued to increase over time, and his points have not rolled over between years.

126.   Further, when he called the specific hotels Defendant had mentioned he would be able to obtain a cheap weekly rate at, the hotels informed him that they had never even heard of Defendant.

127.   After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to Ericson in order to induce him to purchase

the Timeshares, Ericson felt deceived and cheated by Defendant.

128.   Had Defendant been truthful about the actual terms of the Timeshares, Ericson would not have purchased the Timeshare.

129.   Ericson has paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiff Guillermo Astorga Jr.</u>

130.   Plaintiff Guillermo Astorga Jr. ("Astorga") is a citizen and resident of the State of California.

131.   Astorga attended a Timeshare presentation by Defendant in Las Vegas, Nevada.

132.   At the presentation, Defendant's agents represented that if Astorga was not satisfied with his Timeshares, Defendant would buyback the Timeshares and refund Astorga.

133.   Defendant's agents also represented that the maintenance fees on the Timeshares would not increase, and that the points would roll over between years.

134.   After Astorga entered into a purchase agreement for Timeshares with Defendant, he discovered that Defendant's representations had been false.  He was unable to obtain a refund on the Timeshares, his maintenance fees did and continued to increase over time, and his points have not rolled over between years.

135.   After discovering that Defendant had materially misrepresented the terms of

the purchase agreement for Timeshares to Astorga in order to induce him to purchase the Timeshares, Astorga felt deceived and cheated by Defendant.

136.   Had Defendant been truthful about the actual terms of the Timeshares, Astorga would not have purchased the Timeshare.

137.   Astorga has paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

CLASS ALLEGATIONS

138.   Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated,  and thus, seek class certification under Federal Rule of Civil Procedure.

139.   Plaintiffs represent, and are members of the following Class:

> **All consumers, who, between the applicable statute of limitations and the present, purchased Timeshares from Defendant, had their maintenance fee increased by Defendant on Timeshares, or had points for Timeshares that were not rolled over to the next calendar year by Defendant.**

140.   Defendant and their employees or agents are excluded from the Class.

141.   Plaintiffs do not know the exact number of persons in the Class, but believe it to be in the thousands, if not more, making joinder of all these actions impracticable.

142.   The identity of the individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.

143.   There is a well-defined community of interest in the questions of law and fact

involved affecting the members of The Class.  The questions of law and fact common to the Class predominate over questions affecting only individual class members, and include, but are not limited to, the following:

a.  Whether Defendant engaged in unlawful, unfair, or deceptive business practices in representing that it would cancel and refund the Timeshares to Plaintiffs and other Class Members when in fact it would not;

b.  Whether Defendant engaged in unlawful, unfair, or deceptive business practices in representing that the maintenance fees for the Timeshares would not increase over time to Plaintiffs and other Class Members when in fact the maintenance fees did and continued to regularly increase substantially;

c.  Whether Defendant engaged in unlawful, unfair, or deceptive business practices in representing that the points on the Timeshares would automatically roll over annually to Plaintiffs and other Class Members when in fact they would not;

d.  Whether Defendant made misrepresentations with respect to the terms of the purchase agreement for Timeshares;

e.  Whether Defendant profited from these misrepresentations;

f.  Whether Defendant's practices violate FDUTPA;

g.  Whether Defendant's practices violate the Florida False Advertising

Law, Fla. Stat. §§ 817.40 et. seq.;

h. Whether Plaintiffs and Class Members are entitled to declaratory relief, injunctive relief and/or restitution under the FDUTPA and Florida False Advertising Law, Fla. Stat. §§ 817.40 et. seq;

i. The proper formula(s) for calculating and/or restitution owed to Class members.

144.   Plaintiffs will fairly and adequately protect the interest of the Class.

145.   Plaintiffs have retained counsel experienced in consumer class action litigation and in handling claims involving the unfair and deceptive trade practices act.

146.   Plaintiffs' claims are typical of the claims of the Class which all arise from the same operative facts involving Defendant's practices.

147.   A class action is a superior method for the fair and efficient adjudication of this controversy.

148.   Class-wide damages are essential to induce Defendant to comply with the laws alleged in the Complaint.

149.   Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

150.   Plaintiffs, on behalf of themselves and the class, seek injunctive relief against Defendant to prevent Defendant from continuing to falsely represent and advertise to consumers terms which are materially false and damaging in relation to Defendant's Timeshares.

151.   Defendant has acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the class as a whole.

152.   Members of the Class are likely to unaware of their rights.

153.   Common questions will predominate, and there will be no unusual manageability issues.

154.   Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

## FIRST CAUSE OF ACTION
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla Stat. §§ 501.201 et seq.)

155.   Plaintiffs incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

156.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 to 201.213.

157.   The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive,

or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

158.   In Section 501.204(1), FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

159.   The sale of the Timeshares at issue in this cause was a "consumer transaction" within the scope of FDUTPA.

160.   Plaintiffs and Class Members they seek to represent are each a "consumer" as defined by § 501.203, of the FDUTPA.

161.   Defendant's Timeshares are goods or services within the meaning of FDUTPA and Defendant is engaged in trade or commerce within the meaning of the FDUTPA.

162.   Defendant's unfair and deceptive practices are likely to mislead – and have misled – reasonable consumers, such as Plaintiffs and Class Members, and therefore, violate FDUTPA.

163.   Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

164.   Separately, Defendant's conduct has caused and continues to cause substantial injury to Plaintiffs and Class Members.  Plaintiffs and Class Members have suffered

injury in fact due to Defendant's misrepresentations regarding the Timeshares that caused Plaintiffs and Class Members to spend money on services that were not as promised.  Thus, Defendant's conduct has caused substantial injury to Plaintiffs and Class Members.

165.   Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiffs and Class Members that Defendant's Timeshares were able to be cancelled and refunded, that the maintenance fees would not increase, and that the points would annually roll over, when in fact none of these promises were true.  Thus, the injury suffered by Plaintiffs and Class Members is not outweighed by any countervailing benefits to consumers.

166.   The injury suffered by Plaintiffs and Class Members is not an injury that these consumers could reasonably have avoided.  After Defendant falsely and universally represented that Defendant's Timeshares were able to be cancelled and refunded, that the maintenance fees would not increase, and that the points would annually roll over, these consumers suffered injury in fact due to Defendant's refusal to honor these promises and terms.  Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiffs and Class Members to purchase Timeshares with terms that Plaintiffs and Class Members had no way of knowing were false until after they entered into a purchase agreement.  Therefore, the injury

suffered by Plaintiffs and Class Members is not an injury which these consumers could reasonably have avoided.

167.   Plaintiffs' and Class Members reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiffs and Class Members. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

168.   Defendant used false advertising, marketing, and misrepresentations, and otherwise unlawfully induce Plaintiffs and Class Members to purchase the Timeshares.  Had Defendant not falsely advertised, marketed or misrepresented the Timeshares, Plaintiffs and Class Members would not have purchased the Timeshares, or would have purchased an alternative and appropriate services that provided the services they believed they were purchasing.  Defendant's conduct caused and continues to cause economic harm to Plaintiffs and Class Members.

169.   Plaintiffs and Class Members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased Defendant's Timeshares and have both been charged in excess of what was promised, received less benefits than what was promised, and been unable to obtain relief and release from the Timeshares despite Defendant's promises.

170.   Defendant developed and implemented the practices, policies, and procedures that violate FDUTPA in the State of Florida where Defendant is headquartered.

171.   Reasonable consumers must and do rely on Defendant to honestly represent the true nature of its products and services.

172.   Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing the Timeshares would be able to be refunded, had maintenance fees that would not increase, and had points that would annually roll over.

173.   The knowledge required to discern the true nature of the Timeshares described herein are beyond that of the reasonable consumer.

174.   Plaintiff and the Class suffered damages and are entitled to injunctive relief. Thus, pursuant to sections 501.211(2) and 501.2105, Florida Statutes, Plaintiff and the Class make claims for damages, attorney's fees and costs.

175.   The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant.

176.   Pursuant to Section 501.211(1), Florida Statutes, Plaintiffs and the Class seek injunctive relief for, inter alia, the Court to enjoin Defendant's above-described wrongful acts and practices, and for restitution and disgorgement.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FLORIDA FALSE ADVERTISING LAW**
**(Fla Stat. §§ 817.40 et seq.)**

177.   Plaintiffs incorporate by reference the above paragraphs of this Complaint as though fully stated herein.

178.   Pursuant to Florida Statutes § 817.40, et seq., it is unlawful to disseminate or

cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

179. Pursuant to Florida Statutes § 817.41(4), "[t]here shall be a rebuttable presumption that the person named in or obtaining the benefits of any misleading advertisement or any such sale is responsible for such misleading advertisement or unlawful sale."

180. Defendant misled consumers by making misrepresentations and untrue statements about the Timeshares, namely, by promising Plaintiffs and other Class Members that they would be able to cancel the Timeshares and receive a refund if dissatisfied, that their maintenance fees for the Timeshares would not increase, and that the points for the Timeshares would annually roll over. Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers, like Plaintiffs and other Class Members, into purchasing the Timeshares which they believed had features they specifically did not.

181. Defendant developed and implanted the practices, policies, and procedure to mislead consumers in the State of Florida where Defendant is headquartered.

182.   As a direct and proximate result of Defendant's misleading and false advertising, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property.   Plaintiffs reasonably relied upon Defendant's representations regarding the Timeshares' ability to be refunded, the application of maintenance fees, and the ability to roll over points.   In reasonable reliance on Defendant's false advertisements, Plaintiffs and other Class Members purchased Timeshares with Defendant.   In turn Plaintiffs and other Class Members were provided with Timeshares which cost significantly more with significantly less benefits than advertised by Defendant and that they were not able to cancel despite Defendant's representations. As a result of Defendant's conduct, Plaintiffs and other Class Members have suffered injury in fact.

183.   The misleading and false advertising described herein presents a continuing threat to Plaintiffs and Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.   Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.   Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all Class Members of Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and The Class Members pray for judgment as follows:

- Certifying the Class as requested herein;

- Providing such further relief as may be just and proper.

In addition, Plaintiffs, and the Class Members pray for further judgment as follows:

- restitution of the funds improperly obtained by Defendant;

- Any and all statutory enhanced damages;

- All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

- for equitable and injunctive and pursuant to the Florida Deceptive and Unfair Trade Practices Act; and,

- any and all other relief that this Court deems just and proper.

Dated**:** September 22nd, 2017

By: _/s/_   *Jason K. Whittemore*
JASON WHITTEMORE, ESQUIRE
Florida Bar No. 0037256
Wagner McLaughlin, P.A.
601 Bayshore Blvd., Suite 910
Tampa, Florida  33606
(813) 225-4000
Primary e-mail:  Jason@wagnerlaw.com
Secondary e-mail:   Arelys@wagnerlaw.com
Attorneys for Plaintiffs

and

Todd M. Friedman (SBN 216752)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
twheeler@toddflaw.com
Attorneys for Plaintiffs
*Pro Hac Vice Admission Motion to be Filed*

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs and The Class are entitled to, and demand, a trial by jury.

Dated**:** September 22nd, 2017

By: _/s/   *Jason K. Whittemore*
JASON WHITTEMORE, ESQUIRE
Attorneys for Plaintiff