# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **STEPHEN POTJE, TAMELA POTJE, SHARON DAVIS, BEAUFUS DAVIS, MATTHEW BALDWIN, TAMMY BALDWIN, ARNOR LEE, ANGELA LEE, GRETCHEN BROWN, PAUL BROWN, JEREMY ESTRADA,  EMILY ESTRADA, MICHAEL OLIVER, CARRIE OLIVER, RUSSELL WALTERS, ELAINE WALTERS, and MIKE ERICSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | **Case No.: 9:17-cv-81055** <br><br> <u>**CLASS ACTION**</u> <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF** <br><br>   1. **FLORIDA'S VACATION PLAN AND TIMESHARING ACT, FLA STAT. §§ 721.02 ET. SEQ.** <br><br> **JURY TRIAL DEMANDED** |
|               Plaintiffs, <br><br>               v. <br><br> **BLUEGREEN VACATIONS UNLIMITED INC.,** <br><br>               Defendant. | |

## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

### INTRODUCTION

1.     STEPHEN POTJE, TAMMY POTJE, SHARON DAVIS, BEAUFUS DAVIS,

MATTHEW BALDWIN, TAMMY BALDWIN, ARNOR LEE, ANGELA LEE,

GRETCHEN BROWN, PAUL BROWN, JEREMY ESTRADA, EMILY

ESTRADA, MICHAEL OLIVER, CARRIE OLIVER, RUSSELL WALTERS,

ELAINE WALTERS, AND MIKE ERICSON ("Plaintiffs"), by and through their

undersigned counsel, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, to challenge the illegal actions of BLUEGREEN VACATIONS UNLIMITED INC.  ("Defendant") with regard to Defendant's uniform, unfair, and misleading business practices in selling vacation properties ("Timeshares"), including making multiple oral false promises about the ability to cancel and refund Timeshares, the annual increase in maintenance fees on Timeshares, and the ability to roll over points earned by class members automatically for use on future Timeshare reservations without restriction. These misrepresentations were made uniformly across the United States and were originated and controlled from Defendant's corporate headquarters in Florida. Defendant instructed and itself made these misrepresentations in order to mislead consumers into purchasing Timeshares.

2.      Timeshares are a group of properties owned under an arrangement between multiple owners who agree to use a group of homes or locations under a timesharing agreement. Companies, such as Defendant, regularly manage and sell Timeshares to consumers, such as Plaintiffs.  The benefit to a consumer who enters into an agreement to purchase Timeshares that he or she a variety of destinations to choose from for vacations as opposed to just one location.

3.      Plaintiffs seek to represent a group of consumers from various states, including Florida, who attended Defendant's Timeshare presentations and were

subject to the same misrepresentations made by Defendant with regard to the actual terms and nature of Timeshares.  Defendant has a uniform policy overseen and disseminated from its Florida Headquarters to deceive consumers on a national scale in order to induce them into entering into purchasing agreements for Timeshares in order to unfairly profit at their customers' expenses.

4.      In particular, Defendant's representatives were specifically instructed by Defendant to make misrepresentations about the terms, nature, and incidental benefits of Timeshares that Defendant sold in order to induce consumers into entering into binding contracts with terms significantly and materially different and less favorable than the represented terms, even though Defendant and its agents knew that the promises they were making with regard to Timeshares were false.

5.      After Timeshares were purchased by Plaintiffs, Defendant refused to honor the specific terms it instructed its representatives to use in order to lock Plaintiffs and other unsuspecting consumers into expensive, binding contracts which could never be canceled beyond the initial statutory revocation period of seven to ten days, despite representations to the alternative.

6.      Plaintiffs make these allegations on information and belief, with the exception of those allegations that specifically pertain to a Plaintiff, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

7.      While many violations are described below with specificity, this Complaint

alleges violations of the statute cited in its entirety.

8.     Unless otherwise stated, Plaintiffs allege that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures to avoid any such violation, but in fact maintained procedures and policies that directly caused the damage suffered.

### JURISDICTION, VENUE, AND CHOICE OF LAW

9.     Jurisdiction in this Court is proper because the matter in controversy exceeds $5,000,000 exclusive of interest of costs.  Therefore, the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Defendant is headquartered in this judicial district; and, (ii) Defendant conducted business within this judicial district at all times relevant.

11.     Because Defendant conducts business within the State of Florida, personal jurisdiction is established.

12.     The Timeshare Agreements Defendant entered into with Plaintiffs states that the Agreement "shall be interpreted in accordance with the laws of the State of Florida."  Thus, the Agreements at issue are defined and subject to Florida law.

### PARTIES

13.     Plaintiffs Michael Oliver and Carrie Oliver are each an individual who resides

in the State of Florida.

14.    Plaintiffs Jeremy Estrada and Emily Estrada are each an individual who resides in the State of Florida.

15.    Plaintiffs Stephen Potje and Tamela Potje are each an individual who resides in the State of Missouri.

16.    Plaintiffs Sharon Davis and Beaufus Davis are each an individual who resides in the State of Ohio.

17.    Plaintiffs Matthew Baldwin and Tammy Baldwin are each an individual who resides in the State of North Carolina.

18.    Plaintiffs Arnor Lee and Angela Lee are each an individual who resides in the State of Georgia.

19.    Plaintiffs Gretchen Brown and Paul Brown are each an individual who resides in the State of New York.

20.    Plaintiffs Russell Walters and Elaine Walters are each an individual who resides in the State of Ohio.

21.    Plaintiff Mike Ericson is an individual who resides in the State of Alabama.

22.    Defendant is a company whose State of Incorporation and principal place of business is in the State of Florida.

23.   Defendant is a worldwide company that develops, markets and sells Timeshares to consumers.

24.    Defendant's sales of products and services are governed by the controlling law in the states in which they do business and from which the sales of products and services is coordinated from, which is Florida.   All practices and scheme that constitute violations of the Florida Vacation Plan and Timesharing Act, Fla. Stat. §§ 721.02 et. seq. were established and implemented in Florida.

### FACTUAL ALLEGATIONS

25.    Defendant had a common practice and scheme to orally misrepresent and make false and misleading representations about the nature and terms of its Timeshares to consumers in order to induce them into entering into purchasing contracts for Timeshares.

26.    Defendant had a common practice and scheme to place advertising representatives at popular retail outlets (i.e. Bass Pro Outlet), home shows/conventions and other high traffic shopping venues.

27.    Said advertising representatives would solicit customers by convincing them to attend Defendant's sales presentations, subjecting the customer to fraudulent and misleading sales tactics.

28.    Defendant secretly, intentionally, and knowingly engage in a variety of deceptive, fraudulent and unfair practices and tactics.   These practices, tactics and strategies are used company-wide with the knowledge, endorsement and encouragement of senior management. Defendant developed, approved, oversaw,

and disseminated from its Headquarters in Florida specific sales tactics which purposefully mislead consumers, including Plaintiffs, to enter into Timeshares with it.

29.    Defendant's Timeshares require consumers to pay a large initial payment, potentially sub-divided into monthly payments akin to a mortgage, and an additional annual fee in the form of a "maintenance payment."  The maintenance payment is the only recurring payment a consumer would expect to pay on an annual basis to maintain access to his or her Timeshare after the balance on the account was paid off.

30.    In exchange for the above payments, consumers receive a set number of "points" which may be used to redeem rooms with Defendant and its partners through Timeshares.  The points act as money to the consumers to be used on reservations for Timeshares.  Different rooms at different times and different places cost different amounts of points.  The only benefit a consumer receives from entering into a purchasing agreement for a Timeshare with Defendant is directly linked to the ability to accumulate points and use them to rent Timeshares.

31.    Defendant misrepresented that Plaintiffs and other consumers would be able to cancel their Timeshares and obtain a refund at any time if they were not satisfied with the level of services provided, that their maintenance fees on the Timeshares would remain low and not increase, and that the yearly allocation of points for the

7

Timeshares would automatically roll over between years such that they could continue to be used without disclosing that the points use would be restricted.

32.     In reality, these representations were false and Defendant would not permit Plaintiffs to cancel or refund their timeshares, routinely doubled or tripled the represented maintenance fees, and did not automatically roll over any "points" between years and instead charged a fee and placed restrictions on the points rollovers.

33.     After making these misrepresentations to Plaintiffs in order to induce them to purchase a Timeshare, Defendant required Plaintiffs to sign a voluminous agreement which failed to include any of the terms orally represented and promised to Plaintiffs and used to induce Plaintiffs into agreeing to purchase a Timeshare.  Defendant did not provide time nor intend for Plaintiffs to read the agreement prior to signature and intentionally pressured Plaintiffs to sign the day of the presentations and misrepresentations.

34.     BlueGreen disseminated, oversaw, and approved from its Florida headquarters instructions to its sales representatives and other agents to make these representations to consumers in order to induce them into buying and signing contracts for Timeshares for which these representations were objectively and materially false and different from.

35.     Throughout Florida and all other jurisdictions of the United States related

hereto, BlueGreen's sales representatives and managers participated in weekly telephone conferences, as required and approved by its corporate headquarters in Florida, to receive sales tactics strategies, sales instructions, and sales directives.

36.     In such telephone conferences, Defendant directed its sales management and sales representatives on how to specifically respond to consumer inquiries including but not limited to the following topics: maintenance fees, buyback options, rollover points, and property availability.

37.     For the issue of points rollovers, BlueGreen instructed all of its sales representatives and agents to orally represent that BlueGreen points would automatically rollover from year-to-year without disclosing the required annual fee or that use of the points rolled over would be subject to restrictions.

38.     For the issue of maintenance fees, BlueGreen explicitly instructed and trained its sales representatives and agents to convince prospective customers, such as Plaintiffs, that maintenance fees would not increase.  If the consumers questioned, BlueGreen's agents were instructed to request their manager come speak with the consumer and tell them that maintenance fees had not increased in multiple years. Such representations were objectively and knowingly false.

39.     For the issue of refunds, BlueGreen instructed its agents nationwide to tell potential customers that if they became tired of the Timeshare, BlueGreen would buy it back or cancel and refund the consumers' money at any time.  BlueGreen

knew that this representation was objectively false, as BlueGreen does not buyback/refund at market value for its Timeshares after the statutory rescission period that is dictated by the laws of the state where the timeshare contract is entered in to with customers.

40.    BlueGreen directed these misrepresentations at the general public of Florida, because the misrepresentations were made and disseminated nationwide with the oversight and approval of BlueGreen from its headquarters in Florida, including to its many agents in Florida.

41.    Such tactics employed by Defendant rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

42.    Defendant's representations were part of a common scheme to mislead consumers and incentivize them to enter into purchase agreements of Timeshares with Defendant, when in fact both the costs and value of Timeshares were completely misrepresented.

43.    Plaintiffs reasonably believed and relied upon Defendant's representations as to Timeshares.

44.    Plaintiffs materially changed their position in reliance on Defendant's representations and were harmed thereby.

45.    Plaintiffs were unable to ascertain or discover that Defendant's representations were completely false until after Plaintiffs had signed the purchase

agreement for Timeshares and the statutory rescission period had expired. Additionally, Plaintiffs were unable to discover that Defendant's representations regarding the maintenance fees and the inability for the "points" to roll over into the next calendar year until a year had passed after entering into a purchase agreement for Timeshares and the statutory rescission period had expired.

46.    Had Defendant properly represented that it would not honor its representations about the ability to cancel, maintenance fees, and ability to roll over the points for Timeshares, Plaintiffs would not have paid the premium they paid to enter into the Timeshares, and may have not entered into purchase agreements for Timeshares at all.

47.    Defendant benefited from falsely representing the nature and terms of its Timeshares. Defendant benefited from the loss to Plaintiffs.

48.    Defendant significantly and monetarily benefited by charging Plaintiffs additional maintenance fees, additional roll over fees, and by restricting the use of the rolled over points which should have been otherwise available to book vacation days through Timeshares without condition  Plaintiffs lost significant value and money compared to the representations Defendant had made, because Plaintiffs have had to pay increased maintenance fees they should not have owed, have lost value from their Points that were either rolled over for a fee with restrictions or that were not rolled over at all for failure to pay the roll over fee,

and paid money for the Timeshares with the expectation that it could and would be refunded when in fact this was not true.

49.     Plaintiffs allege this activity to be in violation of the Florida Vacation Plan and Timesharing Act, Fla. Stat. §§ 721.02 ("FVPTA").

50.     As further described below, Defendant and its agents uniformly made these misrepresentations to Plaintiffs at presentations that occurred across the United States over the course of years.

<u>Plaintiffs Michael Oliver and Carrie Oliver</u>

Plaintiffs Michael Oliver and Carrie Oliver ("the Olivers") are citizens and residents of the State of Florida.

51.     On or around October 26, 2013, the Olivers attended a Timeshare presentation by Defendant in St. Petersburg, Florida.

52.     Defendant's agents represented that its Timeshares would be usable with other vacation providers including RCI and cruise companies.

53.     Defendant's agents also represented that if the Olivers were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Olivers.

54.     Defendant's agents also represented that the maintenance fees on the Timeshares would not increase.

55.     Defendant's agents failed to disclose that the points would only roll over between years for a fee and subject to restrictions on the usage of the points.

56.     The presentation lasted over three (3) hours.

57.     After the Olivers entered into the purchase agreement for Timeshares with Defendant and after the statutory rescission period had expired, they discovered that Defendant's representations had been false.  They were unable to use Timeshares to stay in any location, including with RCI or for cruises, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and they were forced to pay a fee for points to roll over between years with those points being subject to restriction or they lost the points entirely.

58.     After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Olivers in order to induce them to purchase the Timeshares, the Olivers felt deceived and cheated by Defendant.

59.     Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Olivers would not have purchased the Timeshare.

60.     The Olivers have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Jeremy Estrada and Emily Estrada</u>

        Plaintiffs Jeremy Estrada and Emily Estrada ("the Estradas") are citizens and residents of the State of Florida.

61.     On or around February 2013, the Estradas attended a Timeshare presentation by Defendant in Boyne Falls, Michigan.

13

62.     At the presentation, Defendant's agents represented that if the Estradas were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Estradas.

63.     Defendant's agents also represented that the maintenance fees on the Timeshares would not increase.

64.     Defendant's agents failed to disclose that the points would only roll over between years if the Estradas paid a fee and that the rolled over points would be subject to restrictions.

65.     After the Estradas entered into a purchase agreement for Timeshares with Defendant and the statutory rescission period had expired, they discovered that Defendant's representations had been false.  They were unable to obtain a refund on the Timeshares, their maintenance fees have continued to increase over time, and they were forced to pay a fee to roll over their points with those points being subject to restrictions or they lost the points entirely.

66.     After discovering that Defendant had materially misrepresented the terms of purchase agreement for Timeshares to the Estradas in order to induce them to purchase Timeshares, the Estradas felt deceived and cheated by Defendant.

67.     Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Estradas would not have purchased the Timeshares.

68.     The Estradas have paid significant amounts of money to Defendant between

the down payment, maintenance fees, and interest payments.

Plaintiffs Stephen Potje and Tamela Potje

69.   Plaintiffs Stephen Potje and Tamela Potje ("the Potjes") are citizens and residents of the State of Missouri.

70.   On or around July 2014, the Potjes attended a Timeshare presentation by Defendant in Branson, Missouri.

71.   The Potjes were interested in entering into a purchase agreement for Timeshares with Defendant because their daughter attended college and lives in Branson, Missouri, thus having an annual stay there was of particular value to them.

72.   Defendant's agents represented that its Timeshares would provide this exact benefit and permit the Potjes to annually stay in Branson, Missouri.

73.   Defendant's agents also represented that if the Potjes were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Potjes.

74.   Defendant's agents also represented that the maintenance fees on Timeshares would not increase

75.   Defendant's agents failed to disclose that points would only roll over if a fee were paid and that the rolled over points would be subject to restrictions. that

76.   The presentation lasted over three (3) hours.

77.   After the Potjes entered into a purchase agreement for Timeshares with Defendant and the statutory rescission period had expired, they discovered that

Defendant's representations were false.  They were unable to regularly stay in Branson, Missouri, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and they were forced to pay a fee for points to roll over between years with those points being subject to restriction or they lost the points entirely.

78.    After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Potjes in order to induce them to purchase Timeshares, the Potjes felt deceived and cheated by Defendant.

79.    Had Defendant been truthful about the actual terms of the Timeshares, the Potjes would not have purchased Timeshares.

80.    The Potjes have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Sharon Davis and Beafus Davis</u>

81.    Plaintiffs Sharon Davis and Beafus Davis ("the Davises") are citizens and residents of the State of Ohio.

82.    On or around August 2014, the Davises attended a Timeshare presentation by Defendant in Charleston, South Carolina, after being referred by a Bass Pro Shop.

83.    Defendant's agents represented that its Timeshares would be usable with other vacation providers including RCI and cruise companies.

84.    Defendant's agents also represented that if the Davises were not satisfied with

16

the Timeshares, Defendant would buyback the Timeshares and refund the Davises.

85.    Defendant's agents also represented that the maintenance fees on the Timeshares would not increase.

86.    Defendant's agents failed to disclose that the Davises would be required to pay a fee to roll over unused points and that those points would be subject to restrictions.

87.    The presentation lasted over six (6) hours.

88.    After the Davises entered into the purchase agreements for Timeshares with Defendant and after the statutory rescission period had expired, they discovered that Defendant's representations had been false.  They were unable to use Timeshares to stay in any location, including with RCI or for cruises, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and they were forced to pay a fee for points to roll over between years with those points being subject to restriction or they lost the points entirely..

89.    After discovering that Defendant had materially misrepresented the terms of the Timeshare to the Davises in order to induce them to enter into a purchase agreement for Timeshares, the Davises felt deceived and cheated by Defendant.

90.    Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Davises would not have purchased Timeshares.

91.    The Davises have paid significant amounts of money to Defendant between

the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Matthew Baldwin and Tammy Baldwin</u>

92.    Plaintiffs Matthew Baldwin and Tammy Baldwin ("Baldwins") are each a citizens and resident of the State of North Carolina.

93.    On or around February 2016, the Baldwins attended a Timeshare presentation by Defendant in Sevierville, Tennessee, after being referred by a Bass Pro Shop.

94.    Defendant's agents represented that if the Baldwins were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Baldwins because they were members of the Bass Pro Shop.

95.    Defendant's agents also represented that the maintenance fees on the Timeshares would not increase.

96.    Defendant's agents failed to disclose that points would only roll over between years if the Baldwins paid a fee and that those points would be subject to restrictions.

97.    Defendant represented that the presentation would last one (1) hour, but the presentation actually lasted over seven (7) hours, beginning at 9 a.m. and not ending until 4-5 p.m. that night.

98.    After the Baldwins entered into a purchase agreement for Timeshares from Defendant and after the statutory rescission period had expired, they discovered that Defendant's representations had been false.  They were unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and

they were forced to pay a fee for points to roll over between years with those points being subject to restriction or they lost the points entirely. After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Baldwins in order to induce them to purchase Timeshares, the Baldwins felt deceived and cheated by Defendant.

99.    Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Baldwins would not have purchased Timeshares.

100.   The Baldwins have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Arnor Lee and Angela Lee</u>

101.   Plaintiffs Arnor Lee and Angela Lee ("the Lees") are citizens and residents of the State of Georgia.

102.   On or around June 2015, the Lees attended a Timeshare presentation by Defendant in Jacksonville, Florida.

103.   At the presentation, the Lees explained to Defendant's agent that they were on a fixed income from that the Veteran's Affair office because of Arnor Lee's ex-military disability, thus money was a significant concern to the Lees, as was the ability to be able to get out of and refund the Timeshares if they did not like them.

104.   Defendant's agents represented that its Timeshares would be readily usable anytime at locations all over the country.

105.   Defendant's agents also represented that if the Lees were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Lees.

106.   Defendant's agents also represented that the maintenance fees on the Timeshares would not increase.

107.   Defendant's agents failed to disclose that points would only roll over if a fee was paid by the Lees and that the points would be subject to restrictions

108.   Defendant represented that the presentation would last one (1) hour, but the presentation actually lasted over eight (8) hours.

109.   After the Lees entered into the purchase agreement for Timeshares with Defendant and after the statutory rescission period had expired, they discovered that Defendant's representations had been false.  They were unable to use Timeshares to stay in any location, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and they were forced to pay a fee for points to roll over between years with those points being subject to restriction or they lost the points entirely.

110.   After discovering that Defendant had materially misrepresented the terms of the Timeshare to the Lees in order to induce them to enter into the purchase agreement for Timeshares, the Lees felt deceived and cheated by Defendant.

111.   Had Defendant been truthful about the actual terms of the purchase agreement for Timeshares, the Lees would not have purchased the Timeshares.

112.   The Lees have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Gretchen Brown and Paul Brown</u>

113.   Plaintiffs Gretchen Brown and Paul Brown ("the Browns") are citizens and residents of the State of New York.

114.   On or around May 2015, the Browns attended a Timeshare presentation by Defendant in Shenandoah Valley, Virginia.

115.   At the presentation, Defendant's agents represented that if the Browns were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Browns.

116.   Defendant's agents also represented that the maintenance fees on the Timeshares would not increase.

117.   Defendant's agents failed to disclose that points would only roll over between years if the Browns paid a fee and that those points would be subject to restrictions.

118.   After entering into the purchasing agreement for Timeshares, Paul Brown became seriously ill such that he was no longer able to travel or use the Timeshares. When the Browns contacted Defendant to explain this and request they honor their offer of refund, Defendant refused and stated that the Browns were not permitted to cancel or obtain a refund for the Timeshares.  Instead, Defendant attempted to upsell the Browns into buying additional points.

119.   After the Browns entered into the purchase agreement for Timeshares with Defendant and after the statutory rescission period had expired, they discovered that Defendant's representations had been false.  They were unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and they were forced to pay a fee for points to roll over between years with those points being subject to restriction or they lost the points entirely.

120.   After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Browns in order to induce them to purchase the Timeshares, the Browns felt deceived and cheated by Defendant.

121.   Had Defendant not completely misrepresented the actual terms of the purchase agreement for Timeshares, the Browns would not have purchased the Timeshares.

122.   The Browns have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

<u>Plaintiffs Russell Walters and Elaine Walters</u>

123.   Plaintiffs Russell Walters and Elaine Walters ("the Walters") are citizens and residents of the State of Ohio.

124.   On or around June 2011, the Walters attended a Timeshare presentation by Defendant in Ridgedale, Missouri.

125.   On or around July 2013, the Walters attended a second Timeshare

22

presentation by Defendant in Gatlinburg, Tennessee.

126.   Defendant's agents, in both presentations, represented that its Timeshares would be usable with other vacation providers including RCI and cruise companies.

127.   Defendant's agents also represented, in both presentations, that if the Walters were not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund the Walters.

128.   Defendant's agents also represented that the maintenance fees on the Timeshares would not increase.

129.   Defendant's agents failed to disclose that points would only roll over between years if the Walters paid a fee and that those points would be subject to restrictions.

130.   The presentations each lasted over three (3) hours.

131.   After the Walters entered into a purchase agreement for Timeshares with Defendant and after the stator rescission period had expired, they discovered that Defendant's representations had been false.  They were unable to use the Timeshares to stay in any location, including with RCI or for cruises, unable to obtain a refund on the Timeshares, their maintenance fees did and continued to increase over time, and they were forced to pay a fee for points to roll over between years with those points being subject to restriction or they lost the points entirely. .

132.   After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to the Walters in order to induce them to

purchase the Timeshares, the Walters felt deceived and cheated by Defendant.

133.   Had Defendant been truthful about the actual terms of the Timeshare, the Walters would not have purchased the Timeshares.

134.   The Walters have paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

Plaintiff Mike Ericson

135.   Plaintiff Mike Ericson ("Ericson") is a citizen and resident of the State of Alabama.

136.   On or around September 2013, Mike Ericson attended a Timeshare presentation by Defendant in Shenandoah Valley, Virginia.

137.   Defendant's agents represented that the Timeshares would give Ericson the ability to rent hotel rooms for $276 per week in North Carolina.  Ericson told Defendant that this was incredibly important to him as he was building a house in North Carolina that would require him to spend long periods of time there. Defendant's agents represented that this would be no problem, and that he would specifically be able to rent hotel rooms at a cheap weekly rate if he signed up for a Timeshare.

138.   Defendant's agents represented that if Ericson was not satisfied with the Timeshares, Defendant would buyback the Timeshares and refund Ericson.

139.   Defendant's agents also represented that the maintenance fees on the

Timeshares would not increase.

140.   Defendant's agents failed to disclose that points would only roll over between years if Ericson paid a fee and that those points would be subject to restrictions.

141.   After Ericson entered into the purchase agreement for Timeshares with Defendant and after the statutory rescission period had expired, he discovered that Defendant's representations had been false.  He was unable to obtain a refund on the Timeshares, his maintenance fees did and continued to increase over time, and he was forced to pay a fee for points to roll over between years with those points being subject to restriction or he lost the points entirely.

142.   Further, when he called the specific hotels Defendant had mentioned he would be able to obtain a cheap weekly rate at, the hotels informed him that they had never even heard of Defendant.

143.   After discovering that Defendant had materially misrepresented the terms of the purchase agreement for Timeshares to Ericson in order to induce him to purchase the Timeshares, Ericson felt deceived and cheated by Defendant.

144.   Had Defendant been truthful about the actual terms of the Timeshares, Ericson would not have purchased the Timeshare.

145.   Ericson has paid significant amounts of money to Defendant between the down payment, maintenance fees, and interest payments.

## CLASS ALLEGATIONS

146.   Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated,   and thus, seek class certification under Federal Rule of Civil Procedure.

147.   Plaintiffs represent, and are members of the following two Classes:

(1) A Nationwide class ("the National Class") consisting of all U.S. Citizens who purchased the Timeshares for violation of the FVPTA.

(2) A Florida subclass ("the Florida Class") consisting of all U.S. Citizens who purchased a Timeshare in Florida for violations of the FVPTA.

148.   Plaintiffs reserve the right to amend and edit the class definitions.

149.   Defendant and their employees or agents are excluded from the Classes.

150.   Plaintiffs do not know the exact number of persons in the Classes, but believe it to be in the thousands, if not more, making joinder of all these actions impracticable.

151.   The identity of the individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.

152.   There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Classes.   The questions of law and fact common to the Classes predominate over questions affecting only individual class members, and include, but are not limited to, the following:

    a.   Whether Defendant made misrepresentations with respect to the terms of the purchase agreement for Timeshares;

  b. Whether Defendant profited from these misrepresentations;

  c. Whether Defendant's practices violate the Florida Vacation Plan and Timesharing Act, Fla. Stat. §§ 721.02 et. seq.;

  d. Whether Plaintiffs and Class Members are entitled to declaratory relief, injunctive relief and/or restitution under the FVPTA;

  e. The proper formula(s) for calculating and/or restitution owed to Class members.

153. Plaintiffs will fairly and adequately protect the interest of the Classes.

154. Plaintiffs have retained counsel experienced in consumer class action litigation.

155. Plaintiffs' claims are typical of the claims of the Classes which all arise from the same operative facts involving Defendant's practices.

156. A class action is a superior method for the fair and efficient adjudication of this controversy.

157. Class-wide damages are essential to induce Defendant to comply with the laws alleged in the Complaint.

158. Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

159. Plaintiffs, on behalf of themselves and the class, seek injunctive relief against Defendant to prevent Defendant from continuing to falsely represent and advertise

to consumers terms which are materially false and damaging in relation to Defendant's Timeshares.

160.   Defendant has acted on grounds generally applicable to the Classes thereby making appropriate final declaratory relief with respect to the class as a whole.

161.   Members of the Classes are likely to be unaware of their rights.

162.   Common questions will predominate, and there will be no unusual manageability issues.

163.   Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FLORIDA VACATION PLAN AND TIMESHARING ACT
### (Fla Stat. §§ 721.02 et seq.)
### (As to All Classes)

164.   Plaintiffs incorporate by reference the above paragraphs of this Complaint as though fully stated herein.

165.   The Legislature enacted the Florida's Vacation Plan and Timesharing Act ("FVPTA") based, in part, upon its recognition that "the tourism industry in this state is a vital part of the state's economy; that the sale, promotion, and use of timeshare plans is an emerging, dynamic segment of the tourism industry; that this segment of the tourism industry continues to grow, both in volume of sales and complexity and variety of product structure; and that a uniform and consistent method of regulation is necessary

in order to safeguard Florida's tourism industry and the state's economic well being."

Section 721.02(6), <u>Fla. Stat.</u> (2014).   As a result, the FVPTA is to be "interpreted

broadly in order to encompass all forms of timeshare plans with a duration of at least 3

years that are created with respect to accommodations and facilities that are located in

this state or that are offered for sale in the state…"  <u>Id.</u>  The stated purposes of the

FVPTA, include but are not limited to, the following:

     a. "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans";

     b. "[p]rovide full and fair disclosure to the purchaser and prospective purchasers of timeshare plans";

     c. "[r]equire every timeshare plan offered for sale or created and existing in this state to be subjected to the provisions of" the FVPTA; and

     d.  protect the consumers who purchase timeshare plans.

166.   BlueGreen is and was, at all relevant times, the Developer (as defined by Section

721.05(10), <u>Fla. Stat.</u> (2014)), Seller (as defined by Section 721.05(33), <u>Fla. Stat.</u>

(2014)) and/or Managing Entity (as defined by Section 721.05(22), <u>Fla. Stat.</u> (2014)) of

a Timeshare Plan (as defined by Section 721.05(39), <u>Fla. Stat.</u> (2014)) Plaintiffs

purchased.

167.   Plaintiffs specifically allege that they purchased an interest in a "time share plan"

(as defined by Section 721.05(39), <u>Fla. Stat.</u> (2014)) from Defendants and not an

interest in an "exchange program" (as defined by Section 721.05(16), <u>Fla. Stat.</u> (2014)).

168.   Plaintiffs are and were, at all relevant times, Purchasers (as defined by Section

721.05(30), Fla. Stat. (2014)) of timeshare plans developed, owned, sold, and

managed by BlueGreen and fall within the class of individuals that the FVPTA is

intended to protect.

169.   Pursuant to Section 721.21, <u>Fla. Stat.</u> (2014), "[a]n action for damages or for injunctive relief for a violation of this chapter may be brought by any <u>purchaser</u> … against the <u>developer</u>, a <u>seller</u>, an escrow agent, or the <u>managing entity</u>." (emphasis added).

170.   BlueGreen violated numerous provision of the FVPTA including, but not limited to, Sections 721.075 and 721.11(4)(a) & (h), Fla. Stat. (2014)..

171.   BlueGreen violated Section 721.075, Fla. Stat. (2014) by unlawfully offering or eliminating incidental benefits purchased by Plaintiffs.  The incidental benefits Plaintiffs purchased but were unlawfully eliminated by BlueGreen include, but are not limited to, the following:

> a. Plaintiffs' right to have their points rollover between years automatically and without restriction.

172.   In reality, Defendant did not automatically rollover points between years and instead charged Plaintiffs an administrative fee if they requested the points be rolled over.  Defendant and its agents failed to disclose that points would not roll over from year to year without a fee and failed to disclose that, if the points were rolled over, there would be restrictions on the use of the points.

173.   Defendant placed additional restrictions on the rolled over points such that they could not be used as normal points would and instead could not be used for certain services or reservations with Defendant.   These additional restrictions

impacted the usability and benefits of the rollover points.  These restrictions were not disclosed orally or in any written agreements signed by Plaintiffs.

174.   These misrepresentations and restrictions also violate Section 721.11(4)(h), Fla. Stat. (2014) by misrepresenting the nature and extent of any incidental benefit.

175.   BlueGreen violated Section 721.11(4)(a), Fla. Stat. (2014), by misrepresenting to Plaintiffs a fact or creating a false or misleading impression regarding the timeshare plan Plaintiffs purchased from BlueGreen.  The specific misrepresentations made to Plaintiffs by BlueGreen that violated Section 721.11(4)(a), Fla. Stat. (2014), include, but are not limited to:

    a.  BlueGreen would not increase maintenance fees between the years of ownership of the Timeshares;

    b.  BlueGreen would buyback or permit Plaintiffs to cancel their Timeshares for a full refund if they were not satisfied at any time;

    c.  BlueGreen would rollover the points accrued by Plaintiffs between years such that they would not lose the value of the points if they did not use them all within one year.

176.   At the time of the representations and omissions included in the foregoing paragraphs, the representations were false and were being made for Defendant's financial gain.  Further, these misrepresentations and omissions were purposefully and willfully disseminated, overseen, or approved from BlueGreen's headquarters in Florida to its agents nationwide in order to create a uniform marketing scheme to deceive reasonable consumers like Plaintiffs.  Moreover, Plaintiffs and the putative Class relied on the foregoing representations and subsequent reassurances by

BlueGreen in agreeing to make various purchases and these representations induced Plaintiffs into purchasing Timeshares from BlueGreen.

177.   All of BlueGreen's forgoing violations of the FVPTA have been ongoing and continuous in nature.

178.   As a direct result of BlueGreen's forgoing violations of the FVPTA, Plaintiffs and the putative Class have sustained damages they are entitled to recover from Defendant pursuant to Section 721.21, Fla. Stat. (2014)

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and The Class Members pray for judgment as follows:

- Certifying the National Class and Florida Class as requested herein;

- Providing such further relief as may be just and proper.

In addition, Plaintiffs, and the Class Members pray for further judgment as follows:

- restitution of the funds improperly obtained by Defendant;

- rescission of all contracts entered into with Defendant that were induced by misrepresentation and omission;

- any and all statutory enhanced damages;

- all reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

- for equitable and injunctive and pursuant to the Florida Vacation Plan and

Timesharing Act, Fla. Stat. §§ 721.02 et. seq.; and,

- any and all other relief that this Court deems just and proper.

Dated**:** <u>March 14, 2018</u>

<u>By:  /s/Jason Whittemore</u>
Jason Whittemore
Florida Bar No.0037256
Email: jason@wagnerlaw.com
WAGNER MCLAUGHLIN, P.A.
601 Bayshore Blvd., Suite 910
Tampa, Florida 33606
Telephone:(813) 225-4000

<u>By:  /s/Todd M. Friedman</u>
Todd M. Friedman (PHV)
tfriedman@toddflaw.com
Thomas E. Wheeler (PHV)
twheeler@toddflaw.com
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367

<u>By: /s/ Anthony Garcia</u>
Anthony Garcia
Florida Bar No. 106909
Email: anthony@aglawinc.com
AG LAW, P.A.
742 S. Village Circle
Tampa, FL 33606
Telephone: (813) 259 9555

Attorneys for Plaintiffs

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of

America, Plaintiffs and The Class are entitled to, and demand, a trial by jury.

Dated**:** <u>March 14, 2018</u>

By:<u>_/s/    *Jason K. Whittemore*</u>
JASON WHITTEMORE, ESQUIRE
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of March, 2018, a true and correct copy of the foregoing Second Amended Complaint was served on all counsel of record via the Court's CM/ECF system.


    */s/   Jason K. Whittemore*
JASON WHITTEMORE, ESQUIRE
Florida Bar No. 0037256
Wagner McLaughlin, P.A.
601 Bayshore Blvd., Suite 910
Tampa, Florida  33606
(813) 225-4000
Primary e-mail:  Jason@wagnerlaw.com
Secondary e-mail: Arelys@wagnerlaw.com
Attorneys for Plaintiffs